*NOT FOR PUBLICATION*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**PETER MATTHEW DALE and MAIVE RITA DALE,**<br><br>Debtors. | Case No. **20-40005-BPH** |

**MEMORANDUM OF DECISION**

**INTRODUCTION**

In this Chapter 11 bankruptcy, after due notice, a hearing was held on January 22, 2021 on Debtors' Objection to Proof of Claim No. 9 ("Objection")[1] filed by creditor Timothy Lande ("Lande"). Appearances were noted on the record. Based upon the agreement of the parties, Lande's exhibits were admitted without objection. The Court granted Lande's "Request for Judicial Notice"[2] and took judicial notice of Lande's Proof of Claim No. 9 ("Claim 9") accordingly. Debtor Peter Dale ("Peter") and Lande each testified.

After considering the evidence presented at the hearing and based on the record developed before this Court, the following constitute its findings of fact and conclusions of law to the extent required by Rules 7052 and 9014.[3]

---

[1] ECF No. 81.
[2] ECF No. 153.
[3] References to "ECF Nos." refer to the docket in this case. Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

1

## BACKGROUND & FACTS

The dispute in this case centers on a promissory note executed by Lande and Peter on June 27, 2018 (the "Note"). At some point in 2018, Debtors began to experience financial troubles. Peter approached Lande, a college acquaintance with whom Peter had recently reconnected, and asked whether he would be willing to lend him "transition" funds while Debtors finalized the terms of a personal loan with Valley Bank. Although Lande had no prior experience with personal loans, he agreed to assist Peter in part because Peter described his needs as "near term" and assured Lande the loan would be repaid as soon as the terms of the Valley Bank loan were finalized.

The two agreed on a loan in the principal amount of $50,000. Peter offered to draft a promissory note outlining the terms of their agreement, although the parties presented conflicting testimony as to who ultimately drafted the Note at issue. The Note, as originally written, provided that Lande agreed to "provid[e] a bridge loan to Peter Dale in the amount of $50,000." The $50,000 principal, plus an additional $5,000 was to be repaid no later than September 4, 2018. If payment was not made by September 4, 2018, a late fee of $2,500 would be assessed. If repayment was not made by October 1, 2018, a daily late fee of $100/day would begin to accrue.

Peter failed to make any payment on the loan. Debtors filed for Chapter 11 on January 20, 2020.[4] Debtors' Schedules list an unsecured "personal loan" of $50,000 received from Lande as an undisputed claim.[5] On May 22, 2020, Lande filed Claim 9, which asserted a total claim of

---

[4] ECF No. 1.
[5] ECF No. 20 at 5.

$104,500.00.[6] In support of Claim 9, Lande filed the Note executed by Peter and himself,[7] along with an Itemized Statement of Account, which listed each individual amount comprising Claim 9. The Itemized Statement of Account indicates that Claim 9 is comprised of the principal amount of the loan ($50,000), the additional $5,000 the parties agreed upon, the $2,500 late fee, and the monthly sum of the $100/day late fees that accrued between October 1, 2018 through Debtors' date of filing.[8]

Debtors filed their Objection to Claim 9 on October 12, 2020.[9] The Objection contends that Claim 9 should be disallowed in its entirety because the agreed upon $100/day late fee "amounts to a usurious interest rate of approximately 55%."[10] Lande filed his Response on January 8, 2021.[11] The Response argues that Claim 9 should not be disallowed because it was drafted by Debtor, who had a history of business dealings that Lande, a retired pipefitter, did not.[12] Further, the Response contends that the Note is not usurious because it does not provide for interest.[13] Instead, Lande asserted that the Note had three components: 1) the agreed upon repayment amount of $55,000; 2) a $2,5000 late fee; and 3) the $100/day late fee.[14]

Debtors filed a Brief in Support of their Objection on January 20, 2021 ("Brief").[15] Debtors' Brief asserts that it was Lande, not Peter, who drafted the terms of the Note and that all

---

[6] Claim 9.
[7] Exhibit 2 to Claim 9.
[8] Exhibit 3 to Claim 9.
[9] ECF No. 81.
[10] *Id.*
[11] ECF No. 123.
[12] *Id.* at 2.
[13] *Id.*
[14] *Id.*
[15] ECF No. 157.

3

charges provided for in the Note beyond the principal amount of $50,000 are usurious.[16] The Brief contends that irrespective of the label given to the additional $5,000 repayment amount, the $2,500 late fee, and the $100/day penalty, each amounts to a disguised interest rate that is usurious under Montana law.[17] As a result, the Brief argues that Claim 9 should be disallowed in its entirety.[18]

## ANALYSIS

A properly filed proof of claim constitutes prima facie evidence as to the validity and amount of the claim. Rule 3001(f). Where an objection to a claim is filed, "the objector must come forward with sufficient evidence and 'show facts tending to defeat the claim by probative force equal to that of the allegations in the proofs of claim themselves.'" *Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1039 (9th Cir. 2000) (quoting *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991)). "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *Lundell,* 223. F.3d at 1039. Nevertheless, the ultimate burden of persuasion lies with the claimant. *Id.* At the hearing, Debtors introduced sufficient evidence to defeat Claim 9's presumption of validity. Accordingly, Lande bears the ultimate burden of persuasion and this Court must determine whether he has established by a preponderance of the evidence that Claim 9 is valid.

I. **The charges under the Note are usurious under Montana law.**

Neither party disputes that Montana law is applicable to a determination of the amount

---

[16] *Id.* at 2–3.
[17] *Id.* at 3–7.
[18] *Id.* at 9.

and validity of Claim 9. *See also Grogan v. Garner*, 498 U.S. 279, 283 (1991) ("The validity of a creditor's claim is determined by rules of state law."). As such, the Court must consider Debtors' usury defense under Montana law.

Under Montana law, "usury statutes protect borrowers who lack real bargaining power against overreaching creditors." *Scarr v. Boyer*, 818 P.2d 381, 382 (Mont. 1991). Usury refers to "[t]he taking, receiving, reserving, or charging" of interest in excess of the limit prescribed by Mont. Code Ann. § 31-1-107. Mont. Code Ann. § 31-1-108(1). "Interest" is defined as "compensation…fixed by the parties for the use or forbearance or detention of money." Mont. Code Ann. § 31-1-104. The maximum interest rate allowable between non-regulated lenders is "the greater of 15% or an amount that is 6 percentage points per year above the prime rate published by the federal reserve system…dated 3 business days prior to the execution of the agreement." Mont. Code Ann. § 31-1-107(1). "Charges which are in fact interest remain so, regardless of the label used." *In re Brummer*, 147 B.R. 552, (Bankr. D. Mont. 1992) (quoting *Gonzales County Sav. & Loan Ass'n v. Freeman*, 534 S.W.2d 903, 906 (Tex. 1976).

On June 24, 2018, three days prior to the execution date of the Note at issue here, the prime rate published by the federal reserve system was 5%.[19] Accordingly, the maximum allowable interest rate on the effective date of the Note was 15%.[20]

The Note clearly contemplates charges that exceed the permissible 15% rate permitted

---

[19] Board of Governors of the Federal Reserve System, *H.15 Selected Interest Rates* (June 24, 2018), https://www.federalreserve.gov/datadownload/Chart.aspx?rel=H15&series=02338be6957591cdba0a59c6f09b8389&lastobs=&from=06/24/2018&to=06/25/2018&filetype=csv&label=include&layout=seriescolumn&pp=Download.

[20] Adding the additional 6% interest permitted under Mont. Code Ann. § 31-1-107(1) to the 5% effective prime rate yields a sum of 11%. Accordingly, the larger 15% rate of interest is operative.

5

under Montana law. While Lande contends they are simply "three different agreed-to payments,"[21] and not "interest," this Court is not persuaded. The $5,000 amount is directly related to Peter's "use or forbearance" of the $50,000 loan from Lande. Thus, it falls within Montana's statutory definition of "interest" under Mont. Code Ann. § 31-1-104. It is usurious because it violates the 15% maximum rate set forth in Mont. Code Ann. § 31-1-107(1). As set forth in Debtors' Brief, imposing an additional $5,000 on the $50,000 principal amount of the loan payable 69 days after the Note was executed amounts to an interest rate of 52.9%. Accordingly, the additional $5,000 sum added to the principal amount of the loan is usurious under Montana law.

The analysis is identical for the initial $2,500 late fee and the subsequent $100/day fee, each of which exceeds the maximum allowable 15% interest rate. The Montana Supreme Court has made clear that the statutory definition of interest under Montana law specifically contemplates "detention[s] of money," such as post-default interest charges. *Scarr*, 818 P.2d at 383 ("Montana's statutory definition of interest includes post-default interest."). The Court determines that both the $2,500 penalty if repayment did not occur by October 1, 2018 and the $100/day late imposed each day payment was not made thereafter were usurious interest charges that directly related to Peter's "detention of money" loaned to him under the Note.[22] Therefore, the Court determines that all fees in excess of the $50,000 principal amount under the Note are usurious interest charges under Montana law and that Debtors' Objection should be sustained in

---

[21] ECF No. 123 at 2.
[22] As explained in Debtors' Brief, Claim 9 seeks a total of $104,500, which exceeds the principal amount of the loan between Peter and Lande by $54,500. These additional fees equate to an annual interest rate of 70.292%.

6

part accordingly.

### II. Equitable considerations weigh against imposing the usury penalty against Lande.

When a creditor charges a usurious interest rate, the affected debtor "may recover…a sum double the amount of interest paid…" Mont Code Ann. § 31-1-108(2). However, "courts may consider equitable principles when deciding usury cases." *Confederated Tribes of Grand Ronde Cmty. Of Oregon v. Quantum Five, Inc.*, 91 P.3d 1255, 1258 (Mont. 2004). In doing so, the Montana Supreme Court has declined to enforce the penalty set forth in Mont. Code Ann. § 31-1-108(2) when equitable considerations weigh against doing so. *See Hanson v. Bonner*, 661 P.2d 421, 425 (Mont. 1983).

In *Hanson*, the Montana Supreme Court determined that it would be inequitable to enforce usury penalties where the underlying instruments were drafted by an attorney representing both parties and it was obvious that the attorney "failed to comprehend the legal consequences advantageous to one party and disadvantageous to the other." *Id.* at 425. In reaching its decision, the Court cited *Holt v. Rickett*, 238 S.E.2d 706 (Ga. App. 1977), where the Georgia Court of Appeals held that a borrower whose attorney drafted the allegedly usurious note was estopped from asserting the defense of usury. *Hanson*, 661 P.2d at 425.[23]

---

[23] Lande does not argue that Peter, as the drafter of the Note, is estopped from asserting the defense of usury. As such, this Court does not conclusively decide that issue here. However, the Montana Supreme Court's reliance on *Holt* indicates that such an argument would be consistent with Montana law. Further, it would be consistent with several other courts that have reached similar conclusions. *See, e.g.*, *Carlone v. Lion & the Bull Films, Inc.*, 861 F. Supp. 2d 312, 322 (S.D.N.Y. 2012) ("A borrower may be estopped from interposing a usury defense when, through a special relationship with the lender, the borrower induces reliance on the legality of the transaction."); *Evans v. Hanby*, 378 S.W.3d 723, 729 (Ark. 2011) ("A debtor may be estopped from asserting the defense of usury when the debtor created the infirmity in the contract in order

This Court determines that the equitable considerations presented in this case demand a similar conclusion. During the hearing, Peter repeatedly denied drafting the Note at issue and asserted that each of its terms, including those charging usurious rates of interest, were drafted by Lande. However, text messages introduced at the hearing conclusively established that it was Peter, not Lande, who agreed to draft the Note.[24] Further, Peter testified that he was the one who added the handwritten $100/day late fee provision. Finally, the Court cannot ignore the fact that Peter, who testified that he has been involved in multiple lending transactions similar to the one with Lande, had far more experience in business transactions than Lande, a retired pipefitter who testified he had never extended a personal loan like the one Peter received. In light of these facts, this Court determines that Montana's public policy of "protect[ing] borrowers who lack real bargaining power against overreaching creditors" would not be served by penalizing Lande for the usurious terms drafted by Peter. *Scarr*, 818 P.2d at 382.

The equitable considerations presented in this case, along with the evidence and testimony presented at the hearing lead the Court to determine that it would be inequitable to allow Lande to receive the entire amount of Claim 9. However, it similarly determines that it would be inequitable to disallow Claim 9 in its entirety. Accordingly, Lande shall be entitled to an allowed unsecured claim in the amount of $50,000, the principal amount of the loan and the undisputed amount listed on Debtors' Schedules. Lande shall also be entitled to interest at the

---

to take advantage of the creditor."); *Liebergesell v. Evans*, 613 P.2d 1170, (Wash. 1980) (applying the doctrine of estoppel and holding that "the general doctrines of estoppel compel us to join the majority of jurisdictions in refusing to allow the defendant to assert usury in cases in which the elements of estoppel exist.").

[24] Lande Rebuttal Exhibit 1. The text message from Peter to Lande contradicted Peter's testimony.

rate of 10% per annum as set forth in Mont. Code Ann. § 31-1-106.[25] Interest shall be calculated from September 4, 2018, the repayment date set forth in the Note, to January 13, 2020, the date Debtors' case was commenced. Accordingly, the total amount of Lande's allowed unsecured claim shall be $56,800.

For the reasons stated above, the Court will enter a separate order sustaining in part and overruling in part Debtors' Objection to Lande's Claim 9.

Dated February 12, 2021.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana

---

[25] Mont. Code Ann. § 31-1-106 provides, in relevant part, that:

> (1) …unless there is an express contract in writing fixing a different rate…interest payable on all money at a rate of 10% a year after it becomes due on:
>    (a) Any instrument of writing, except a judgment.

See also *Hanson*, 661 P.2d at 425 (applying the rate of interest set forth in Mont. Code Ann. § 31-1-106 "because of the non-enforceability of the interest rate stated in the note.")