### *NOT FOR PUBLICATION*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**PETER MATTHEW DALE and**<br>**MAIVE RITA DALE,**<br><br>Debtors. | Case No. **20-40005-BPH** |

## MEMORANDUM OF DECISION

### INTRODUCTION

In this Chapter 11 bankruptcy, after due notice, a hearing was held on January 21, 2021 on Debtors' Objection to Proof of Claim No. 5 ("Objection")[1] filed by creditor William D. Vogel II ("Vogel") and the Response to the Objection filed by Debtors.[2] Appearances were noted on the record. Upon the agreement of the parties, Debtors' exhibits 1–26 and Vogel's exhibits A–D, F–J, L, and M were admitted without objection. Vogel's exhibit E was admitted over Debtors' objection. The Court granted the Motions/Requests for Judicial Notice filed by Vogel and Debtors[3] by Order[4] prior to the hearing.

After considering the evidence presented at the hearing and based on the record developed before this Court, the following constitute its findings of fact and conclusions of law

---

[1] ECF No. 79. References to "ECF Nos." refer to the docket in this case. Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] ECF No. 124

[3] ECF Nos. 147 and 150, respectively.

[4] ECF Nos. 148 and 151, respectively.

to the extent required by Rules 7052 and 9014.

## BACKGROUND & FACTS

**I.      The Mission Peak Venture.**

The issues presented in the Objection and Response stem from a failed business venture undertaken by Debtor Peter Dale ("Peter") and Vogel. Peter and Vogel first met over two decades ago and worked together at various times throughout their careers in the securities industry. At some point in 2012 or 2013, the two began formulating a plan to launch their own business, "Mission Peak Capital Management" ("Mission Peak"), as co-partners and began pursuing two potential ventures under the name of Mission Peak. The first venture involved Peter and Vogel attempting to secure a "sleeve of capital" they could ultimately use to join an existing hedge fund or "platform" as a team. The second venture involved the two men attempting to locate an "anchor investor" with approximately $100 million dollars that they could use to launch a hedge fund of their own. If either venture was successful, Vogel and Peter agreed to share the future profits as co-partners.

Each party possessed unique skills and traits they used to market and pursue the dual tracks.  Peter contributed a long and successful track record of investing and Vogel contributed his reputation and contacts in the industry. Ultimately, and despite their efforts, they were unable to find an anchor investor or a sleeve of capital and abandoned the endeavor at some point in late 2015.

At some point in 2013, while the men were still attempting to launch Mission Peak, Peter began to have financial difficulties and approached Vogel for assistance, explaining that he was experiencing a "liquidity issue." Throughout the spring and summer of 2013, Vogel transferred funds totaling $55,000 to Peter by way of four separate transactions.  At the time of the money

transfers, the parties did not execute a promissory note or any other documentation of their transaction. Since neither party was receiving any income from their Mission Peak pursuit, Peter used the funds primarily, if not exclusively, to pay various personal expenses unrelated to the business.

In 2014, roughly one year after Vogel's last fund transfer to Peter, Vogel sent an email requesting that Peter "settl[e] all or a portion of your interest free debt with me."[5] Peter did not respond. Vogel made another request via text message in July of 2015 and received no response. On September 21, 2015, Vogel sent another text message to Peter asking that he "square accounts by Friday of this week."[6] Peter responded and denied any obligation to repay the funds, asserting that both he and Vogel had lost money in the failed Mission Peak venture.[7]

## II.     The New York Litigation.

On October 7, 2015, Vogel filed a *pro se* Complaint in the Supreme Court of the State of New York, County of New York (the "Complaint").[8] The Complaint alleged that Vogel extended "a series of personal bridge loans" to Peter throughout the spring and summer of 2013 that had not been repaid. Accordingly, Vogel alleged that Peter had been unjustly enriched and sought $55,000 in damages plus interest.[9] Peter, also acting *pro se*, filed an Answer to the Complaint on October 14, 2015, denying the assertions in the Complaint and asserting that "there was no written agreement stating terms regarding personal bridge loans and repayment."[10] Peter subsequently filed an Amended Answer that, as relevant here, asserted that Peter "did not assent

---

[5] Vogel Exhibit F.
[6] Vogel Exhibit G.
[7] *Id.*
[8] Vogel Exhibit H.
[9] *Id.*
[10] Vogel Exhibit I.

to be bound to repay [Vogel]" and insinuated that Vogel had engaged in some sort of wrongdoing related to the Mission Peak venture.[11] After some discovery was conducted, the lawsuit in New York was stayed as a result of Peter's Chapter 11 filing.

### III.   Debtors' Bankruptcy.

Debtors filed for Chapter 11 relief on January 13, 2020.[12] Vogel filed Proof of Claim No. 5 on March 9, 2020,[13] which was subsequently amended on January 11, 2021 (as amended, "Claim 5").[14] Claim 5 asserts a claim for $87,322.33, comprised of the $55,000 in funds transferred to Peter by Vogel and "pre-judgment" interest of 9%.[15]

Debtors filed an Objection to Claim 5 on October 8, 2020 and amended their Objection on January 15, 2021 ("Amended Objection").[16] The Objection asserts that Debtors do not owe any money to Vogel and deny any personal obligation to repay the $55,000 Peter received from Vogel.[17] Instead, Debtors contend that the money transferred to Peter was an "investment" in the failed Mission Peak venture for which Peter had no personal liability.[18] Further, the Objection asserts that Vogel is not entitled to pre-judgment interest and that the Statute of Frauds prevents prosecution of Vogel's claim.[19]

---

[11] Vogel Exhibit J.
[12] ECF No. 1.
[13] Proof of Claim No. 5-1.
[14] Proof of Claim No. 5-2.
[15] Id.
[16] ECF No. 141. Debtors original objection to Claim 5 was filed on October 8, 2020 at ECF No. 79 and amended at ECF No. 141. The Objection at ECF No. 141 is the operative filing for purposes of this Decision.
[17] Id.
[18] Id.
[19] Id. Debtors also assert that Vogel's claim should be disallowed because "[t]here are no notes or loan documents to support Vogel's claim as required by [Rule] 3001(c)(1)." The Court is not persuaded by this assertion and denies relief on this basis to the extent such a ruling is required. Rule 3001(c)(1) is expressly limited to "Claim[s] based on a writing." Claim 5 is based on an

Vogel filed a response to Debtors' original Objection on January 11, 2021 ("Response").[20] The Response asserted that Vogel is entitled to the full amount of Claim 5 because it is based on an underlying oral contract between Peter and Vogel that Peter breached when he failed to repay the funds received from Vogel.[21] As an "alternative" theory, Vogel now contends that permitting Debtors to retain the benefit of the $55,000 without any obligation to repay Vogel would constitute unjust enrichment.[22]

## ANALYSIS

A properly filed proof of claim constitutes prima facie evidence as to the validity and amount of the claim. Rule 3001(f). Where an objection to the claim is filed, "the objector must come forward with sufficient evidence and 'show facts tending to defeat the claim by probative force equal to that of the allegations in the proofs of claim themselves.'" *Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1039 (9th Cir. 2000) (quoting *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991)). "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *Lundell,* 223. F.3d at 1039. Nevertheless, the ultimate burden of persuasion lies with the claimant. *Id.*

At the hearing, Debtors introduced sufficient evidence to rebut Claim 5's presumption of validity. Accordingly, Vogel bears the ultimate burden of establishing the validity of Claim 5 by a preponderance of the evidence. For the reasons, below, the Court determines that Vogel has

---

alleged oral contract and/or an unjust enrichment claim, thereby removing it from the scope of Rule 3001(c)(1).

[20] ECF No. 124. Vogel did not file any amended response following the filing of Debtor's Amended Objection. Accordingly, Vogel's Response at ECF No. 124 is the operative filing for purposes of this Decision.

[21] *Id.* at 8.

[22] *Id.* at 10.

satisfied his burden and is entitled to an allowed unsecured claim in the amount of $55,000.

**I.      The validity of Claim 5 is governed by New York law.**

As stated, Vogel's Response asserts that he is entitled to the full amount of Claim 5 because a valid oral or implied contract existed between himself and Peter that created an obligation for Peter to repay the $55,000 he received from Vogel in 2013. Alternatively, Vogel claims an entitlement to the amount listed in Claim 5 because permitting Peter to retain the benefit of the funds he received without repaying Vogel would amount to unjust enrichment.

"The validity of a creditor's claim is determined by rules of state law." *Grogan v. Garner*, 498 U.S. 279, 283 (1991). Accordingly, the Court must apply New York law to determine whether Vogel has established the elements of an oral or implied contract and/or his unjust enrichment claim.

**II.     Vogel failed to establish an oral or implied contract between he and Peter under New York law.**

Under New York law, the requirements for the formation of any contract are: 1) an offer; 2) acceptance; and 3) consideration. *Lumhoo v. Home Depot USA, Inc.*, 229 F. Supp.2d 121, 161 (E.D.N.Y. 2002). Oral contracts are enforceable so long as the conduct of the parties must evince a mutual assent "sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Kramer v. Greene*, 144 A.D.3d 438, 439 (N.Y. App. Div. 2016). "In determining whether the parties entered into a contractual agreement…it is necessary to look…to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds." *Lumhoo,* 229 F. Supp.2d at 161 (quoting *Brown Bros. Elec. Contractors, Inc. v. Beam Constr. Corp.*, 41 N.Y.2d 397, 399 (N.Y. 1977)). The party seeking to enforce the alleged oral contract bears the burden to prove both that an agreement existed and its material terms. *Kramer,* 142 A.D.3d at 439.

Where no express oral or written agreement exists between parties, New York law permits courts to find a contract "implied in fact" based on "inference from the facts and circumstances of the case, …derived from the presumed intention of the parties as indicated by their conduct." *Ancile Investment Co. Ltd. v. Archer Daniels Midland Co.*, 784 F. Supp.2d 296, 303 (S.D.N.Y. 2011) (quoting *Leibowitz v. Cornell University*, 584 F.3d 487, 506–07 (2d. Cir. 2009)). "An implied-in-fact contract is 'as binding as one that is express, and similarly requires such elements as consideration, mutual assent, legal capacity and legal subject matter.'" *Id.*

Here, Vogel failed to produce sufficient evidence to establish that he and Peter were "truly in agreement with respect to all material terms" of their alleged contract. Indeed, there was virtually no testimony presented as to any specific terms of the alleged contract between Vogel and Peter. For example, Vogel testified that he "expected" the money he transferred to Peter would be repaid within 30-60 days of the date of transfer but failed to establish that Peter agreed to any specific repayment schedule. Vogel's testimony demonstrates that even in his own mind, the date of repayment was a fluid and indefinite concept. In a scenario such as this one, where the alleged contract relates to the repayment of a loan, there is arguably no more "material" term than the one dictating when repayment is to occur. This Court is not convinced that there was a true "meeting of the minds" between Vogel and Peter as to the repayment of the $55,000 sum, and finds that Vogel failed to establish the existence of an oral or implied contract between himself and Peter accordingly.

### III.   Permitting Peter to retain the $55,000 without repaying Vogel constitutes unjust enrichment under New York law.

"To recover under a theory of unjust enrichment, a plaintiff must show that (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *New York State*

7

*Workers' Compensation Bd. v. Program Risk Management, Inc.*, 150 A.D.3d 1589, 1594 (N.Y. App. Div. 2017). "The essence of unjust enrichment is that one party has received money or a benefit at the expense of the other." *Goldman v. Simon Prop. Group., Inc.*, 58 A.D.3d 208, 220 (N.Y. App. Div. 2008).

The evidence in the record and the testimony at the hearing satisfy each of the elements of unjust enrichment required under New York law. There is no dispute that Peter was enriched when he received $55,000 from Vogel in the spring and summer in 2013. The record reflects Peter used the funds to pay personal expenses, including rent, and wrote checks to his wife Maive. The use of the funds directed to Maive is unknown, but ultimately irrelevant because there is no dispute that the majority of the funds were used for personal expenses.

There is also no dispute that Peter's enrichment came at the sole expense of Vogel, who received nothing in return for the funds he transferred to Peter. Debtors contend that they have no personal obligation to repay the funds Peter received from Vogel because the funds were an "investment" in Peter and, by extension, the Mission Peak venture.[23] In exchange for Vogel's "investment," Peter testified that the two agreed Vogel would be repaid by "include[ing] Vogel in the business venture"[24] and granting Vogel an equity stake in the company once it launched. The Court is not persuaded. Vogel and Peter both testified that, from its inception, Vogel would be included in the Mission Peak venture and maintain an equity stake in the company if it was successful. Furthermore, both parties testified that Vogel contributed something to the venture Peter did not–his connections in the investment community. Finally, both Peter and Vogel testified that they were not employed while they pursued the Mission Peak venture and devoted

---

[23] ECF No. 152 at 1.
[24] *Id.*

8

virtually all of their time to the endeavor. Debtors' contention that the funds from Vogel were an "investment" in Peter is unpersuasive.

Although the Court has no reason to doubt that Vogel would have been repaid had the Mission Peak venture been successful, it was not. Mission Peak's ultimate demise is not synonymous with Peter obtaining a right to retain the benefit conferred on him by Vogel's act of generosity at a time when Peter was experiencing financial difficulties. Simply put, the undisputed evidence establishes that Peter retained a personal benefit at the expense of Vogel. The Court determines that it would be against equity and good conscience to permit Peter to retain those funds with no obligation to repay Vogel. Accordingly, Vogel has established that Claim 5 is based on a valid unjust enrichment claim under New York law.[25]

### IV. Vogel is entitled to an allowed unsecured claim worth $55,000.

New York law provides that a court may award interest on a sum awarded for breach of contract or because of an act that deprives another of possession or enjoyment of property. N.Y. C.P.L.R. § 5001(a). However, in actions that are equitable in nature, including the unjust enrichment claim forming the basis for Vogel's Claim 5, the award of interest lies squarely within the court's discretion. *Id.*; *see also Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 516 (N.Y. 2012) (describing unjust enrichment as "an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties.").

Vogel's Claim 5 asserts a claim in the amount of $87,322.33. As explained in the first exhibit to Claim 5, the $87,322.33 sum is comprised of the principal amounts of the four money

---

[25] Although not pled in Vogel's Claim 5 or in his Response, the Court finds that the evidence presented in this case similarly would entitle Vogel to an unsecured claim based on "money had and received" under New York law. *See Rocks & Jeans v. Lakeview Auto Sales & Serv.*, 184 A.D.2d 502, 503(N.Y. App. Div.1992) ("The cause of action at issue is for money had and received. The cause of action arises when, in the absence of an agreement, one party possesses money that in equity and good conscience it ought not retain.").

transfers from Vogel to Peter plus a "Pre-Judgment Interest" rate of 9%. Despite Vogel's alleged entitlement to interest on the principal amount of each loan Peter received, the evidence in the record and presented at the hearing establishes that Vogel expressly referred to the money advanced to Peter as an "interest free debt."[26] The Court has already determined that it would be inequitable to allow Peter to retain the funds without repaying Vogel. It similarly determines that it would be inequitable to permit Vogel to collect interest on an obligation he himself described as "interest free." Accordingly, that portion of Debtors' Objection is sustained. Vogel shall be entitled to an allowed unsecured claim worth $55,000.

For the reasons stated above, the Court will enter a separate order sustaining in part and overruling in part Debtors' Objection to Vogel's Claim 5.

Dated February 12, 2021.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana

---

[26] *See, e.g.*, Vogel Exhibit F.