*NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**PETER MATTHEW DALE and MAIVE RITA DALE,**<br><br>Debtors. | Case No. **20-40005-BPH** |

## MEMORANDUM OF DECISION

### INTRODUCTION

In this Chapter 11 bankruptcy, after due notice, a hearing was held on February 9, 2021 on Debtors' Objection to Proof of Claim No. 8 ("Amended Objection")[1] filed by creditor John Blair ("Blair") and the Response to the Amended Objection filed by Blair ("Response").[2] Appearances were noted on the record. Based on the parties' agreement, Debtors' exhibits 3, 16-19, 21, and 24-29 and Blair's exhibits A–D and G-I were admitted without objection. Debtors' exhibit 21 was admitted over Blair's objection. Blair's exhibit E was admitted over Debtors' objection. The Court granted the Motions/Requests for Judicial Notice filed by Blair and Debtors[3] by Order[4] prior to the hearing.

After considering the evidence presented at the hearing and based on the record

---

[1] ECF No. 140. References to "ECF Nos." refer to the docket in this case. Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.
[2] ECF No. 125.
[3] ECF Nos. 147 and 150, respectively.
[4] ECF Nos. 148 and 151, respectively.

1

developed before this Court, the following constitute its findings of fact and conclusions of law to the extent required by Rules 7052 and 9014.

## BACKGROUND & FACTS[5]

### I. The Mission Peak Venture.

The issues presented in the Amended Objection and Response stem from a failed business venture undertaken by Debtor Peter Dale ("Peter"), Blair, and William Vogel II ("Vogel"), another creditor in this case. Peter and Blair first met over thirty years ago and worked together at various times throughout their careers in the securities industry. In late 2013, Peter apprised Blair that he and Vogel were attempting to launch a hedge fund called "Mission Peak Capital Management" ("Mission Peak") and invited Blair to join the venture as a co-partner. Blair accepted the invitation. Emails admitted at the hearing indicated that Blair was to serve as the Head Trader if the Mission Peak venture was successful. Blair and Vogel never met or communicated with one another and Peter acted as an intermediary between the parties as they worked to launch Mission Peak.

In late December of 2013, Blair and Peter met formally to discuss the Mission Peak venture for the first time. Following their meeting, Peter explained to Blair that he was experiencing "near term liquidity issues" in his personal life and asked Blair for assistance. Blair agreed to help and transferred Peter $50,000 on January 2, 2014. The source of the funds transferred to Peter was Blair's IRA account. The parties did not execute a promissory note or any other documentation. The parties now disagree whether Peter had any obligation repay the

---

[5] This Decision marks the second instance the Court has dealt with a claim objection stemming from the Mission Peak venture. Its Decision at ECF No. 176 contains a more thorough recitation of the background facts related to the Mission Peak endeavor. It determines that those facts are unnecessary to repeat for purposes of this Decision.

funds. According to Blair, Peter agreed to repay the money he received after finalizing the terms of a loan for approximately $1 million dollars. If he was unable to secure the loan, Blair expected Peter would repay the amount borrowed from other sources or assets he owned. According to Peter, the funds from Blair were an "investment" in him as the driving force behind Mission Peak. Accordingly, Debtors contend that Blair would be repaid with an equity interest in Mission Peak if it was successful, or not at all.

Despite the conflicting testimony, it is undisputed Peter used the funds primarily, if not exclusively, to pay various personal expenses unrelated to the business. Despite not being repaid after the initial transfer in January, Blair made a second transfer to Peter on July 23, 2014. The evidence admitted at the hearing established that, in conjunction with the second transfer, Blair withdrew $25,000 from his IRA account, but only transferred $18,750 to Peter. An email from Blair to Peter dated July 24, 2014 indicates that the additional $6,250 was withheld based on Blair's understanding of the tax implications associated with the $25,000 withdrawal.

In addition to explaining Blair's withholding of the $6,250, the July 24, 2014 email requested that Peter repay Blair a total amount of $93,250. This figure was the sum of the principal amounts of the $50,000 and $18,750 transfers from Blair to Peter, plus the estimated early withdrawal penalty and state and federal taxes that were not withheld in conjunction with Blair's first transfer. The email also suggested that Peter told Blair he "wanted to make [Blair] whole on the funds" he received. Finally, it directed Peter to review the figures contained in the email and discuss any "omissions" with Blair. Peter never responded to the email.

II. **The New York Litigation.**

On August 3, 2015, Blair, through counsel, filed a Complaint in the Supreme Court of the

State of New York, County of New York (the "Complaint").[6] The Complaint alleged that Blair extended two "loans" to Peter in January and July of 2014, that Peter "promised to pay [Blair] the total value of $99,500," and that Peter "defaulted in the payments due." Peter, acting *pro se*, filed an Answer on October 14, 2015. Peter's Answer denied the substance of the Complaint and asserted that "there was no breach of contract because there was no written agreement or written contract." After some discovery was conducted, including the depositions of both Peter and Blair and the filing of competing motions for summary judgment, the lawsuit in New York was stayed as a result of Peter's Chapter 11 filing.

### III. Debtors' Bankruptcy.

Debtors filed for Chapter 11 relief on January 13, 2020.[7] Blair filed Proof of Claim No. 8 on May 15, 2020 ("Claim"),[8] which was subsequently amended on January 11, 2021 ("Amended Claim").[9] The Amended Claim asserts a claim for $156,396.45, comprised of the $68,750 in total funds transferred to Peter by Blair, "projected" state and federal taxes, withdrawal penalties, and "pre-judgment" interest of 9%.[10]

Debtors filed an Objection to Blair's Claim on October 8, 2020[11] and filed their Amended Objection on January 15, 2021.[12] The Amended Objection asserts that Debtors do not owe any money to Blair and deny any personal obligation to repay the funds Peter received from

---

[6] Blair Exhibit G.
[7] ECF No. 1.
[8] Proof of Claim No. 8-1.
[9] Proof of Claim No. 8-2. The Amended Proof of Claim 8-2 is operative for purposes of this Decision.
[10] *Id.*
[11] ECF No. 80
[12] ECF No. 140. The Objection at ECF No. 140 is the operative filing for purposes of this Decision.

Blair.[13] Instead, Debtors contend that the money transferred to Peter was an "investment" in the failed Mission Peak venture for which Peter had no personal liability.[14] The Amended Objection also contends that the amounts asserted in the Amended Claim which exceed the $68,750 actually transferred to Peter amount to usurious interest charges.[15] Further, the Amended Objection asserts that the Amended Claim lacks proof that any taxes and/or early withdrawal penalties were actually incurred as a result of the money transfers and that Blair is not entitled to pre-judgment interest.[16] Finally, the Amended Objection contends that the Amended Claim should be disallowed because Blair stated "there was a condition precedent to any claim this was a personal loan." In support of their contentions, Debtors filed a Brief in Support of their Amended Objection on February 5, 2021.[17]

Blair filed a response to Debtors' original Objection on January 11, 2021 ("Response").[18] The Response asserted that Blair is entitled to the full amount of the Amended Claim because it is based on an underlying oral contract between Peter and Blair that Peter breached when he failed to repay the funds received from Blair.[19] Prior to the hearing, Blair also filed a Brief in Support of the Response on February 8, 2021.[20] Blair's Brief contends that Peter is barred from asserting the defenses of usury and of the existence of a condition precedent in this proceeding because Peter failed to raise it in his Answer to Blair's Complaint in the New York litigation.

---

[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] ECF No. 167.
[18] ECF No. 125. Blair did not file any amended response following the filing of Debtor's Amended Objection. Accordingly, Blair's Response at ECF No. 125, and the brief in support at ECF No. 168 are the operative filings for purposes of this Decision.
[19] *Id.* at 8.
[20] ECF No. 168.

5

Alternatively, Blair argues that Peter's new defenses were not served at least 30 days before the hearing on Peter's Amended Objection to the Amended Claim in accordance with Fed. R. Bankr. P. 3007(a)(1).[21] Finally, Blair's Brief asserts that permitting Peter to retain the benefit of the funds he received from Blair would amount to unjust enrichment under New York law.[22]

## ANALYSIS

### I. Debtors are not barred from raising the defenses contained in their Amended Objection.

Both parties have engaged in a liberal approach to their pleadings, filing amended pleadings, objections and briefs just days before the hearing. As a result, before turning to the substance of the parties' positions, the Court first addresses Blair's contention that Debtors are barred from asserting the new arguments raised in the Amended Objection. Consideration of Blair's argument requires a review of the chronology of the parties' serial filings.

Blair filed his original Claim on May 14, 2020.[23] Debtors filed their original Objection to Blair's Claim on October 8, 2020.[24] Following a status conference, a hearing was set on the Objection to Blair's claim for January 20, 2021 by Order on December 30, 2020.[25] On January 11, 2021, roughly six months after the claims bar date and only nine days before the original date set for a hearing on the Objection to Blair's Claim, Blair filed his Amended Claim and his Response to Debtors' original Objection.[26] Following a discussion with the parties and in light of events at the United States Capitol, the January 20, 2021 hearing was postponed until February 9, 2021. On January 15, 2021, four days after the Amended Claim was filed, Debtors filed their

---

[21] *Id.* at 5-6.
[22] *Id.* at 14.
[23] Proof of Claim 8-2.
[24] ECF No. 80.
[25] ECF No. 118.
[26] *See* Proof of Claim 8-2; ECF No. 6.

Amended Objection.[27] Finally, less than a week prior to the hearing, the parties each filed briefs in support of their contentions.[28]

The Ninth Circuit has adhered to a "long-standing policy of liberally permitting amendments to proofs of claim" so long as the opposing party is not "unduly prejudiced by the amendment." *In re Parrott Broad Ltd. P'ship*, 2013 Bankr. LEXIS 4328 *20 (Bankr. D. Idaho 2013) (citing *In re Roberts Farms, Inc.*, 980 F.2d 1248, 1251 (9th Cir. 1992)). Debtors were not unduly prejudiced by Blair's filing of the Amended Claim and similarly, Blair was not prejudiced by the filing of Debtors' Amended Objection, which asserted the usury and condition precedent defenses. Indeed, each of these new defenses was addressed in Blair's Brief, which demonstrates Blair was not prejudiced and was prepared to address the issues.

Consideration of Blair's unjust enrichment claim, raised for the first time in his Brief, does not prejudice Debtors.[29] Debtors previously addressed an unjust enrichment theory in connection with the Vogel claim. Given Debtors' familiarity with the unjust enrichment theory and law, and facts here that parallel those underlying the Vogel claim, Debtors are not prejudiced by consideration of this theory. Each of these new arguments and defenses posited by the parties in their serial filings share a same common nexus of facts that relate back to Blair's original proof of claim. *See* 9 Collier on Bankruptcy ¶ 3001.04[1] (16th ed. 2020) (discussing the "nexus" test applied by many courts when determining whether amendments to proofs of claim should be allowed). Therefore, the Court will consider the unjust enrichment argument raised by Blair as well as the usury and condition precedent defenses raised by Debtors.

## II. Blair is entitled to an allowed unsecured claim of $68,750.

---

[27] ECF No. 140.
[28] ECF Nos. 167 and 168.
[29] ECF No. 168.

A properly filed proof of claim constitutes prima facie evidence as to the validity and amount of the claim. Rule 3001(f). Where an objection to the claim is filed, "the objector must come forward with sufficient evidence and 'show facts tending to defeat the claim by probative force equal to that of the allegations in the proofs of claim themselves.'" *Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1039 (9th Cir. 2000) (quoting *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991)). "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *Lundell,* 223. F.3d at 1039. Nevertheless, the ultimate burden of persuasion lies with the claimant. *Id.*

At the hearing, Debtors introduced sufficient evidence to rebut the Amended Claim's presumption of validity. Accordingly, Blair bears the ultimate burden of establishing the validity of the Amended Claim by a preponderance of the evidence.

**A. The validity of the Amended Claim is governed by New York law.**

Blair asserts that he is entitled to the full amount of the Amended Claim because a valid oral or implied contract existed between himself and Peter that created an obligation for Peter to repay the $68,750 he received from Blair in 2014, plus interest, as well as the projected penalties and state and federal taxes set forth in the attachment to the Amended Claim. Alternatively, Blair claims an entitlement to the amount listed in the Amended Claim because permitting Peter to retain the benefit of the funds he received without repaying Blair would amount to unjust enrichment.

"The validity of a creditor's claim is determined by rules of state law." *Grogan v. Garner*, 498 U.S. 279, 283 (1991). Accordingly, the Court must apply New York law to determine whether Blair has established the elements of an oral or implied contract and/or his

unjust enrichment claim.

### B. Blair failed to establish an oral or implied contract between he and Peter under New York law.

Under New York law, the requirements for the formation of any contract are: 1) an offer; 2) acceptance; and 3) consideration. *Lumhoo v. Home Depot USA, Inc.*, 229 F. Supp.2d 121, 161 (E.D.N.Y. 2002). Oral contracts are enforceable so long as the conduct of the parties must evince a mutual assent "sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Kramer v. Greene*, 144 A.D.3d 438, 439 (N.Y. App. Div. 2016). "In determining whether the parties entered into a contractual agreement…it is necessary to look…to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds." *Lumhoo,* 229 F. Supp.2d at 161 (quoting *Brown Bros. Elec. Contractors, Inc. v. Beam Constr. Corp.*, 41 N.Y.2d 397, 399 (N.Y. 1977)). The party seeking to enforce the alleged oral contract bears the burden to prove both that an agreement existed and its material terms. *Kramer*, 142 A.D.3d at 439.

Where no express oral or written agreement exists between parties, New York law permits courts to find a contract "implied in fact" based on "inference from the facts and circumstances of the case, …derived from the presumed intention of the parties as indicated by their conduct." *Ancile Investment Co. Ltd. v. Archer Daniels Midland Co.*, 784 F. Supp.2d 296, 303 (S.D.N.Y. 2011) (quoting *Leibowitz v. Cornell University*, 584 F.3d 487, 506–07 (2d. Cir. 2009)). "An implied-in-fact contract is 'as binding as one that is express, and similarly requires such elements as consideration, mutual assent, legal capacity and legal subject matter.'" *Id.*

Based on the evidence presented at the hearing, this Court cannot conclude Blair established the existence of an oral or implied contract between Peter and himself. The undisputed evidence presented establishes only that Blair transferred funds totaling $68,750 on

two occasions in 2014 and that Blair "expected" to be repaid shortly thereafter, either from the loan proceeds Peter was attempting to obtain or from other assets Blair believed Peter held. There was no agreement as to any specific date Peter was required to repay the funds he received or whether he would be obligated to pay additional interest on those funds. When considering an alleged contract for a personal loan such as this one, at a minimum, there should be some indicia of an agreement between the parties as to the repayment or maturity date of the loan and terms of repayment, even if the contract is oral or implied.

Under these circumstances, it is difficult for the Court to conclude there was any agreement as to the material terms for a loan. More than 6 months after the initial transfer, Blair attempted to outline the terms of repayment, and other material terms in the July 2014 email. However, Peter never responded to the email, and there is no evidence he agreed to the terms reflected in Blair's email. The lack of evidence establishing the mutual assent of the parties to the material terms outlined in the July 2014 email, (authored 6 months after the initial advance), leads this Court to determine that a contract was never formed between Peter and Blair. Debtors' Amended Objection is sustained in part accordingly.

### C. Permitting Peter to retain the $55,000 without repaying Blair amounts to unjust enrichment under New York law.

"To recover under a theory of unjust enrichment, a plaintiff must show that (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *New York State Workers' Compensation Bd. v. Program Risk Management, Inc.*, 150 A.D.3d 1589, 1594 (N.Y. App. Div. 2017). "The essence of unjust enrichment is that one party has received money or a benefit at the expense of the other." *Goldman v. Simon Prop. Group., Inc.*, 58 A.D.3d 208, 220 (N.Y. App. Div. 2008).

The evidence in the record and the testimony at the hearing satisfies each of the requirements for unjust enrichment under New York law. There is no dispute that Peter received a benefit from Blair as a result of the $68,750 he received. Peter used these funds to pay personal expenses that in no way benefitted Blair or the Mission Peak venture the two were pursuing. Debtors' contention that the funds were an "investment" in Peter personally and that, by extension, they allowed the parties to continue their Mission Peak efforts is not persuasive. There is also no dispute that Peter's benefit came at the sole expense of Blair, who took the funds out of his IRA account and received nothing in return. Permitting Peter to retain this benefit without any obligation to repay Blair clearly violates traditional notions of equity and good conscience.

Peter's contention that if any obligation to repay the funds existed, it was based on a condition precedent does not affect this conclusion. Blair testified that Peter agreed to repay the funds after he obtained the proceeds of a loan secured by his OSEP account. Peter testified that he intended to repay the funds from Blair in the form of equity in Mission Peak if the venture was successful. Since the venture was not successful, he had no obligation to repay the funds. This conflicting testimony establishes that neither Blair nor Peter had a concrete understanding of either the source or timing of repayment. To the extent repayment was contingent, the parties disagree on whether the contingency was obtaining the loan, or Mission Peak's success. This inconsistency undermines any contention that repayment was contingent on the completion of a condition precedent. The only conclusions this Court can draw from the evidence presented are: (i) that Blair transferred money to Peter, a colleague, to assist with "near term liquidity issues" in his personal life; (ii) that the funds transferred to Peter by Blair were never repaid; (iii) that Peter alone benefitted from the transaction; and, (iv) that the benefits Peter enjoyed came at the sole expense of Blair. Accordingly, Blair has established that Peter has been unjustly enriched under

11

New York law.

### D. Blair's Amended Claim shall be limited to the actual amounts Blair transferred to Peter.

Debtors contend that the Amended Claim should be disallowed because it includes additional charges that violate New York's usury laws.[30] Specifically, these charges include "projected" state and federal income tax as well as "projected" early withdrawal penalties associated with both Blair's withdrawals from his IRA account. New York General Obligations Law § 5-501(2) provides that "[n]o person…shall, directly or indirectly, charge, take or receive any money…as interest on the loan or forbearance of any money" at a rate exceeding six percent. "Interest" includes all amounts paid or payable to the lender "in consideration for making the loan or forbearance." *Id.*

Examining the nature of the additional fees Debtors claim are usurious, this Court is not convinced that they fall within the statutory definition of "interest." The early withdrawal penalty and state and federal taxes Blair seeks from Peter were not "in consideration for making the loan," but were incurred by Blair as a result of Blair's withdrawal of the funds from his IRA account. While not technically "interest" under these circumstances, the charges are nonetheless disallowed as a component of the Claim. *See Sandra's Jewel Box v. 401 Hotel*, 273 A.D.2d 1, 3 (N.Y. App. Div. 2000) (declining to enforce additional charges that, "while not technically interest," were unreasonable and confiscatory in nature in violation of New York's criminal usury statute).

Attempting to recover these additional charges from Peter is particularly inappropriate in this case where Blair's own proof of claim characterizes the items as "projected." The tax

---

[30] ECF No. 167 at 6.

implications and withdrawal penalties, if any, were incurred by Blair in 2014 and/or early 2015 when he filed his 2014 state and federal tax returns. If those fees were actually paid by Blair, there is no need to rely on "projected" amounts now, over seven years after they arose.[31] Further, there can be no dispute that Peter did not enjoy the benefit of these additional amounts, as required under Blair's unjust enrichment theory. While Blair may have incurred a penalty or tax implication as a result of his IRA withdrawals, the Court will not allow these amounts as a component of the Claim.

Debtors also assert that Blair is not entitled to interest on the funds transferred to Peter. New York law provides that a court may award interest on a sum awarded for breach of contract or because of an act that deprives another of possession or enjoyment of property. N.Y. C.P.L.R. § 5001(a). However, in actions that are equitable in nature, including those for unjust enrichment, the award of interest lies squarely within the court's discretion. *Id.*; *see also Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 516 (N.Y. 2012) (describing unjust enrichment as "an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties.").

The Amended Claim asserts a claim in the amount of $156,396.45, more than double the amount of the funds Blair transferred to Peter. In addition to the additional charges discussed above, Blair seeks an award of interest on the funds transferred to Peter at an annual rate of 9%. However, neither Blair nor Peter testified that the funds Peter received were to be repaid with interest. The equitable considerations in this case dictate that Blair be entitled to an allowed

---

[31] The inability to determine the actual value of these additional fees is likely attributable to the fact that Blair made several other withdrawals from his IRA account during the 2014 tax year that were unrelated to the funds transferred to Peter, a fact he testified to during the hearing on February 9, 2021.

unsecured claim equal to the amounts Peter actually received. No more and no less. Debtors' portion of the Amended Objection seeking to disallow the "prejudgment interest" contained in the Amended Claim is sustained. Blair is entitled to an allowed unsecured claim in the amount of $68,750.

For the reasons stated above, the Court will enter a separate order sustaining in part and overruling in part Debtors' Amended Objection to the Amended Claim.

Dated February 22, 2021.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana